UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ANTHONY FOX,

                Petitioner,

-against-

SUPERINTENDENT THOMAS POOLE,

                Respondent.

----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**06-CV-856 (CBA)(LB)**

**BLOOM, United States Magistrate Judge:**

This petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was referred to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons that follow, it is respectfully recommended that the petition should be denied.

## BACKGROUND

**I. Facts**

In the early morning hours of February 20, 2002, Bryce Burns opened the door to her apartment at 294 Osborn Street in Brooklyn for her friend, Cherie Hunter. As Ms. Hunter entered, petitioner Anthony Fox ("petitioner"), a stranger to the two women (Tr. 221, 329)[1], forced his way into the apartment behind Ms. Hunter. Once inside, petitioner demanded money from the three occupants of the apartment: Ms. Burns, Ms. Hunter and Ms. Burns's brother, Arthur Griggs. The three occupants told petitioner that they had no money and asked petitioner to leave (Tr. 223). Petitioner then brandished a knife and again demanded money. Ms. Burns moved toward the phone to call the police. Petitioner grabbed the phone from her and began

---

[1] "Tr" refers to the trial transcript; "H" refers to the pre-trial transcript.

swinging the knife, cutting Ms. Hunter in the abdomen. (Tr.224, 330-31). The three occupants retreated down the hallway to the bedroom where they barricaded the door and called the police from a second phone. (Tr. 224, 270, 332). Petitioner remained in the apartment for 10-15 minutes before leaving with Ms. Burns's telephone and Ms. Hunter's coat. (Tr. 225).

Two police officers stationed a block away responded to a radio call reporting that a "male black" suspect was involved in an assault in progress. (Tr. 133). Upon arrival outside Ms. Burns's building, the officers stopped petitioner as he was leaving the front door. Petitioner told the officers that he did not live in the building, but was visiting apartment 5A, the site of the assault. (Tr. 105). The officers led petitioner, who was carrying Ms. Hunter's stolen coat, to apartment 5A for identification by the victims. The testimony differed as to precisely how this identification was conducted. The officers claim that they posed no question prior to the complaining witnesses' identification of petitioner as the assailant. (Tr. 167-70). Ms. Burns, on the other hand, testified that the officers asked her, "is this the guy?" (Tr. 257). It is not disputed that Ms. Burns positively identified petitioner as the assailant to the police. (Tr. 225).

## II. Hearing and Trial

At the pretrial hearing, petitioner requested a continuance to call the complaining witnesses, Ms. Burns and Ms. Hunter. (H. 30-31). Petitioner asserted that the two witnesses' testimony at the grand jury contradicted the testimony of the police officers at the pretrial hearing regarding what was said by the officers at the time of the identification. Petitioner argued that the contradictory testimony would establish that the "show-up" identification of the petitioner at the scene of the crime was impermissibly suggestive. (H. 30-34). The court refused

2

to suppress the identification, ruling that the "circumstances were clearly sufficiently exigent to permit the show-ups ..." and that the contradictions in testimony were "without sufficient consequence to justify compelling the complainant to testify at the Wade hearing." Appeal Brief for Defendant-Appellant, attached as Exhibit A to Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus (hereinafter "Exhibit A")(citing the December 12, 2002 decision).

Petitioner was convicted on March 27, 2003, after a jury trial in Supreme Court, Kings County, of two counts of Robbery in the First Degree (N.Y. Penal Law § 160.15[3]) and one count of Burglary in the Second Degree (N.Y. Penal Law § 140.25[2]). He was sentenced to twelve years for each robbery count and to ten years for the burglary count, all to be served concurrently. The jury acquitted petitioner of all assault charges.

## II. Post-Verdict Proceedings

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Department ("Appellate Division"), arguing that the court erred when it denied a continuance of the Wade hearing to allow defendant to call the complainants as witnesses. Petitioner's appeal again argued that the witnesses' conflicting testimony raised questions about whether petitioner's showup identification was impermissibly suggestive.

On October 25, 2004, the Appellate Division affirmed the conviction, stating that there were no "substantial issues regarding the constitutionality of the identifications" and that "the defendant did not otherwise establish a need for the witnesses' testimony." People v. Fox, 11 A.D.3d 709, 710; 784 N.Y.S.2d 565, 566-67 (2d Dep't 2004). The New York Court of Appeals

denied petitioner's application for leave to appeal on December 30, 2004. People v. Fox, 4 N.Y.3d 743 (Table); 824 N.E.2d 57; 790 N.Y.S.2d 656 (2004).

On January 8, 2005, petitioner filed a motion in New York Supreme Court to vacate the conviction, pursuant to N.Y. Crim. Proc. Law §440.10. The motion raised (1) that petitioner received ineffective assistance of counsel because both his first and second assigned counsel failed to protect his right to testify before the grand jury, and that his second attorney failed to interview certain witnesses or visit the scene of the crime; (2) that the prosecutor withheld Brady material in the form of crime-scene photographs, the criminal record of one of the complaining witnesses, and a cooperation agreement with these same witnesses; and (3) that petitioner was arrested without probable cause. Decision and Order of Motion to Vacate (attached as Exhibit E to Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus)(hereinafter "Exhibit E"). The motion was denied on October 11, 2005, finding no basis for the claim that counsel failed to protect petitioner's right to testify at the grand jury. The court further found that counsel's failure to interview specific witnesses was irrelevant because the witnesses were cross-examined at trial, and petitioner had the opportunity at that time to raise any points with his attorney. Id. at 3. Petitioner admits that counsel possessed photos of the scene which contained images of all of the evidence that he claims would be exculpatory. Id. The court also found that petitioner's claim that the prosecution withheld Brady material, specifically photographs, was directly contradicted by notations in the court record that defense counsel had in fact received the photos. The court also denied the second Brady claim because the prosecution is only required to provide defense counsel with a witness's record of conviction. The complaining witness in this case, however, only received an adjournment in contemplation

of dismissal, which is not a conviction under state law, and therefore not considered Brady material. Id. at 4. Further, petitioner failed to substantiate his third Brady claim regarding the existence of a cooperation agreement between the prosecution and the witness. Id. Finally, the court denied petitioner's challenge to the probable cause for the arrest because the trial record contained sufficient evidence to hear such a claim on appeal, yet petitioner "unjustifiably" failed to raise the issue on appeal. Id. at 5. The Appellate Division denied petitioner's application for leave to appeal the denial of the motion to vacate on February 8, 2006.

The present petition for a writ of habeas corpus under 28 U.S.C. § 2254 raises the same issues petitioner raised on direct appeal and in the motion to vacate, including: (1) that the hearing court erred by not allowing petitioner to call the complaining witness to testify at the pre-trial hearing; (2) that petitioner was denied the effective assistance of counsel when his attorney failed to investigate the crime scene, failed to raise the lack of probable cause for his arrest, and waived petitioner's right to testify at the grand jury; (3) that the evidence against petitioner should have been supressed; and (4) that the prosecution withheld Brady materials. Petitioner also raises two claims that he raised by writ of error coram nobis: that he was denied the effective assistance of appellate counsel when his attorney failed to raise trial counsel's failure to (1) request a missing-witness charge and (2) request an Allen charge.

## DISCUSSION

### I. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") sets forth the standard of review for habeas corpus petitions. For claims that have been fully adjudicated on the merits

5

in state court, a petitioner must show that the state court proceedings: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); see Mask v. McGinnis, 252 F.3d 85, 90 (2d Cir. 2001) (per curiam) (holding that habeas relief is warranted "*only* upon a showing that the state courts unreasonably applied clearly established Supreme Court precedent") (emphasis in original).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is an unreasonable application of Federal law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. Williams further held that the reasonableness of the application of the law should be scrutinized objectively and also pointed out that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ, there must be "some increment of incorrectness beyond error," although "the increment need not be

great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (citation omitted.).

## II. Petitioner's Request for a Continuance of the Pretrial Hearing

Petitioner first asserts that the court erred when it denied his request for a continuance to call the complaining witnesses to testify.

At the Wade hearing,[2] arresting Officer Rodriquez testified that shortly after apprehending petitioner outside the apartment building, he and his partner, Officer Mike Thomas, led petitioner to the victims' apartment. (H. 10, 14-15, 25). According to Officer Rodriguez's testimony, as soon as Ms. Burns and Ms. Hunter saw petitioner, they both exclaimed, "that's him, that's the guy." (H. 10). The officer's testimony conflicted with Ms. Burns's testimony at the grand jury that the officers asked her "was this the guy that was harassing [you?]" (H. 26-27) Petitioner argues that the discrepancy between the officer and victims' testimonies demonstrates that the witnesses' identifications were impermissibly suggestive. Petitioner argues that had he been given the opportunity to call the complaining witnesses to the stand, he would have established that the identification was tainted. Defense counsel submitted a motion to suppress the showup identifications, or in the alternative, to allow the complainants to testify. (Exhibit A at 8). The hearing court denied the motion, ruling that the showup "was made in close temporal proximity to the commission of the crime" for the "purpose of securing a prompt and reliable identification" and that "the circumstances were

---

[2] A Wade hearing is held to determine whether a witness's identification testimony is tainted by an improperly made identification. See United States v. Wade, 388 U.S.218 (1966).

clearly sufficiently exigent to permit the show-ups." The court further stated that any conflict in the accounting of the events was not sufficient to compel the witnesses to testify or to change the decision regarding the propriety of the showup identification.

The Appellate Division agreed and stated that the right to call a complainant to testify at a Wade hearing is triggered only where the hearing evidence raises substantial issues as to the constitutionality of the identification procedure. Id. at 710 (citing People v. Scott, 290 A.D.2d 522, 736 N.Y.S.2d 691 (2d Dep't 2002)).[3]

The Appellate Division's decision was not contrary to or an unreasonable application of clearly established Federal law. There is no clearly established Federal law that defendants are entitled to call complaining witnesses to testify at a pretrial hearing. In fact, a hearing is not necessarily required where the propriety of the identification is at issue. See Watkins v. Sowders, 449 U.S. 341 (1981) ("... it does not follow that the Constitution requires a per se rule compelling such a procedure in every case."). Therefore the Court acted within its discretion when it denied petitioner's request for a continuation of the Wade hearing to call the complaining witnesses.

Moreover, the court's evaluation of the showup was not contrary to or an unreasonable application of Federal law. Although a lineup is preferred to a showup identification, Stovall v. Denno, 388 U.S. 293, 302 (1967), "the admission of evidence of a showup without more does not violate due process." Neil v. Biggers, 409 U.S. 188, 198 (1972). Instead of establishing a

---

[3] The Appellate Division decision concluded: (1) the simultaneous viewing of the defendant by two complainants did not render the showup impermissible given the exigent circumstances of the case, (2) viewing the petitioner in possession of stolen property did not render the procedure unduly suggestive, (3) even if the officers did indeed prompt the victims by asking if the man standing before them was the one harassing then, the leading nature of the questions would not render the identification "unduly suggestive," and (4) that it was immaterial where in relation to the door petitioner stood when the identification process took place. Id. at 709.

8

strict exclusionary rule regarding showup identification evidence, the Court has ruled that "reliability is the linchpin in determining the admissibility of identification testimony," Manson v. Brathwaite, 432 U.S. 98, 114 (1977), and such a determination depends on the "totality of the circumstances." Stovall v. Denno, 388 U.S. 293, 302 (1977).

In Biggers, the Court set out the factors to evaluate the reliability of the identification procedure. These factors include the opportunity of the witness to view the perpetrator at the time of the crime, the witness's degree of attention, the accuracy of the witness's description of the perpetrator, the level of certainty demonstrated by the witness at the identification, and the length of time between the crime and the identification. Biggers, 409 U.S. at 199-200.

Here, the witnesses had an extended opportunity to view petitioner at the time of the crime. The witness's description of the assailant when the police were called generally matched petitioner's appearance at the showup.[4] Moreover, when asked to identify the man before them, Ms. Burns replied with certainty that petitioner was the man who had forced his way into the apartment. (Tr. 225, 260). As the witnesses identified petitioner immediately after the crime, it would not have tainted the identification if the officers had asked "is this the guy who was harassing you?" See, Edwards v. Fischer, 2002 WL 1225538 at 4-5, (S.D.N.Y. June 5, 2002) (that suspect was handcuffed did not make the identification impermissibly suggestive). Accordingly, the State Court's decision regarding the identification was not contrary to or unreasonable application of Federal law.

---

[4] Ms. Burns description of the perpetrator in her 911 call was of a "light-skinned black male, bald-headed, wearing a blue coat." [Tr. 133]

9

# III. Ineffective Assistance of Counsel Claims

Petitioner argues that he was denied the effective assistance of counsel. The Sixth Amendment provides that in "in all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel includes "the right to *effective* assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970) (emphasis added). In order to prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that (1) counsel's representation "fell below an objective standard of reasonableness" as measured by "prevailing professional norms," and (2) that "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. at 694. Finally, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

## A. Failure to Investigate Crime Scene

Petitioner claims that counsel was ineffective for failing to investigate the crime scene and familiarize himself with the layout of the apartment building. Petitioner argues that had counsel investigated the crime scene, he would have discovered that it would have been impossible for the arresting officer to have seen petitioner running down the stairs and out of the building because the officer's view was obstructed by a wall.

However, as there were photos in evidence demonstrating that the arresting officer's view would have been obstructed, there was no need for petitioner's attorney to visit the crime

10

scene. Counsel's failure to do so did not fall "below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

Petitioner also fails to demonstrate how counsel's failure to investigate the crime scene prejudiced him. According to petitioner, counsel's omission left him ill-prepared to cross-examine Officer Rodriguez and to argue that petitioner's Fourth Amendment rights were violated. Affidavit in Support of Motion to Vacate Judgment at 4 (hereinafter "Petitioner's Affidavit"), attached as Exhibit C to Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus. Petitioner argues that had counsel visited the building, he would have learned that Officer Rodriguez's testimony regarding the locked front door was false and that counsel could have impeached the officer. However, whether the building's front door was locked had no bearing on the case and would not have led to a different outcome. A number of witnesses testified that petitioner pushed his way into the apartment and the victim's coat and phone were found on petitioner when he was arrested.

Therefore, the State Court's decision regarding plaintiff's ineffective assistance of counsel claim based on counsel's failure to investigate was not contrary to or an unreasonable application of Federal law.

## B. Waiver of Right to a Preliminary Hearing and Right to Testify Before the Grand Jury

Petitioner claims that his attorney was ineffective because he waived his right to a preliminary hearing under New York Criminal Procedure Law § 180.80 and his right to testify before the grand jury under §190.50(5)(a). Petitioner claims he never authorized his attorney to waive these rights. Petitioner states that there is no record that he personally waived these rights. Petitioner's Affidavit, at 2. However, petitioner fails to allege how his appearance at a

11

preliminary hearing or at the grand jury prejudiced his defense. The performance and prejudice prongs of Strickland may be addressed in any order. See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."). Here, there is no basis to find that the outcome would have been different had petitioner appeared at a preliminary hearing or at the grand jury. Therefore, the State Court decision on this issue was not contrary to or an unreasonable application of Federal law.

### C. Failure to Raise the Fourth Amendment

Petitioner also claims that counsel was ineffective for failing to raise a Fourth Amendment challenge to his arrest. Petitioner asserts that because "male black" was the description radioed to the arresting officers, there was no probable cause for his arrest. Petition at 7. However, as petitioner was seen leaving the building as the police were responding to the radio call and when questioned, petitioner admitted that he had come from the victims' apartment, 5A, the arresting officers had cause to stop petitioner. Moreover, petitioner was then identified by the victims, as were the coat and phone found in his possession. Therefore, the State Court's decision on this portion of petitioner's ineffective assistance claim was not contrary to or an unreasonable application of Federal law.

### D. Failure to Interview Prosecution Witnesses

Petitioner claims counsel was ineffective for failing to interview the Emergency Medical Service (EMS) workers before they testified at trial. Petitioner argues that counsel could have

used the EMS workers' testimony to challenge his showup identification. Petitioner's Affidavit, at 5. Again, petitioner argues that counsel missed another opportunity to impeach the testimony of Officer Rodriguez. Id. However, as the state court noted in its decision denying the motion to vacate, these same witnesses were fully cross-examined at trial, affording the opportunity to raise these issues with the witnesses in the presence of the jury. Exhibit E at 3. Petitioner's claim that counsel should have interviewed these witnesses prior to trial does not establish that counsel was ineffective. See Matura v. United States, 875 F.Supp. 235, 237 (S.D.N.Y. 1995) ("Petitioner's bald assertion that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably."); U.S. v. Vargas, 871 F.Supp. 623, 624 (S.D.N.Y. 1994)(rejecting ineffective assistance claim that two informants were not interviewed where petitioner failed to demonstrate that cross-examination of the witnesses was limited or ineffective). This claim should be denied as the State Court's decision was not contrary to or an unreasonable application of Federal law.

## IV. Ineffective Assistance of Appellate Counsel Claim

Petitioner raises that appellate counsel was ineffective because he failed to raise defense counsel's (1) failure to request a missing-witness charge until after trial, and (2) failure to request an Allen charge.[5]

---

[5] The instant petition purports to raise these two grounds as the basis for an ineffective assistance of trial counsel claim. Petition at 7-8. However, because these issues should have been raised on direct appeal and were not, respondent argues that they are procedurally barred. See Memorandum of Law in Opposition at 6. The Court agrees that petitioner did not raise these grounds on direct appeal. However, petitioner filed a writ of error coram nobis on these issues raising the ineffective assistance of appellate counsel. The Appellate Division, Second Department denied the writ in an Order dated November 21, 2006 which states: "[t]he appellant has failed to establish that he was denied the effective assistance of appellate counsel." People v. Fox, 34 A.D.3d 693 (Nov. 21, 2006) (citations omitted). Petitioner sought leave to appeal to the

13

Without explicitly saying so, petitioner here "relies on the ineffectiveness of his appellate counsel as cause for his default of the trial counsel claim." Larrea v. Bennett, 368 F.3d 179, 183 (2d Cir. 2004). Petitioner claims that trial counsel's "failure to request a 'missing witness' charge until after the trial was over, or an 'Allen' charge during the time the jury was 'deadlocked' caused 'prejudice' to the petitioner's overall defense presentation. That said errors were not harmless." Petition at 8.

An Allen charge derives its name from Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). Although the use of an Allen charge has been consistently approved when a jury is apparently deadlocked, courts have refused to "draw fine lines" that would "circumscribe the trial court's discretion" in determining when and under what circumstances an Allen charge is appropriate. United States v. Hynes, 424 F.2d 754, 758 (2d Cir. 1970). The Supreme Court has instructed that propriety of an Allen charge must be evaluated "in its context and under all the circumstances." Lowenfield v. Phelps, 484 U.S. 231, 237, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). The Court's concern is to make sure that when an Allen charge is given, there is no coercion of the jury.

Here, petitioner challenges appellate counsel's failure to raise defense counsel's failure to request an Allen charge or a missing witness charge. First, there is no requirement that a Court give an Allen charge, only that if such a charge is given, that it should not be coercive. Second,

---

Court of Appeals, which denied his application on March 12, 2007. See docket entry 15 at 3. Since petitioner did exhaust these two ineffective assistance of counsel claims regarding the performance of appellate counsel, albeit after the instant petition was filed, this Court should review the claims.

under the circumstances presented,[6] trial counsel's failure to request an Allen charge was reasonable. As to a missing witness charge, defense counsel's request was made, however it was made after summation. (Tr. 386). The Court ruled it was untimely and without merit. (Tr. 391).

A claim for ineffective assistance of appellate counsel is evaluated under the same standard as is a claim for ineffective assistance of trial counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. Smith v. Robbins, 528 U.S. 259, 285 (2000) (applying the Strickland test to appellate counsel's performance); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Mayo, 13 F.3d at 533-34.

A petitioner may establish ineffective assistance by showing that appellate counsel failed to raise "significant and obvious issues" on appeal. Kendrick v. Greiner, 296 F.Supp.2d 348, 360 (E.D.N.Y. 2003) (quoting Mayo, 13 F.3d at 533). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288 (citing Jones v. Barnes, 463 U.S. 745, 750-54 (1983)); accord, e.g., Sellan v. Kuhlman, 261 F.3d 303, 317 (2d Cir. 2001) ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."). Thus, a

---

[6] When the jury sent out a note (Exhibit 11) that deliberations had halted (Tr. 445), and another note that a "juror barricaded in bathroom for 25 minutes" (Tr. 450-451), the Judge recessed and sent the jury home for the weekend.

petitioner may establish constitutionally ineffective assistance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533; Otero v. Eisenschmidt, No. 01 Civ. 2562, 2004 WL 2504382, at *29 (S.D.N.Y. Nov. 8, 2004).

The issues raised on appeal were more significant than the Allen charge and missing witness charge. The State Court's denial of plaintiff's ineffective assistance of appellate counsel claim was not contrary to or an unreasonable application of Federal law.

## IV. Evidence Obtained by Way of Unlawful Arrest

Petitioner next claims that the evidence against him was obtained by an unlawful arrest in violation of the Fourth Amendment. However, under Stone v. Powell, 428 U.S. 465 (1976), "federal habeas corpus relief is not available on the ground that evidence produced at trial was the result of an unconstitutional search and seizure, unless the state denied the prisoner an opportunity for full and fair litigation of the claim." Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991) (citing Stone v. Powell, 428 U.S. 465 (1976)). Therefore, this Court cannot review petitioner's Fourth Amendment claims unless (a) the state provided no corrective procedure to redress the alleged Fourth Amendment violations; or (b) there is a corrective mechanism, but the defendant was unable to use it because of an "unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir.1992) (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir.1977)).

New York provides defendants with corrective procedures under section 710 of the state criminal procedure code, see N.Y.Crim. Proc. Law § 710.10 *et seq*, and these procedures have

been approved by the federal courts as "facially adequate." Capellan, 975 F.2d at 70 (citing Holmes v. Scully, 706 F.Supp. 195, 201 (E.D.N.Y. 1989)). Therefore, in order to raise a Fourth Amendment claim on a writ of habeas corpus, petitioner must demonstrate a "disruption or obstruction of a state proceeding". Id. (quoting Shaw v. Scully, 654 F.Supp. 859, 864 (S.D.N.Y. 1987)). Petitioner makes no showing that there was an "unconscionable breakdown in the underlying process," therefore Stone v. Powell precludes consideration of his Fourth Amendment claims.

**V. Withholding of Brady Material**

Finally, petitioner claims that the prosecution withheld Brady material, specifically the criminal record of the complaining witness, Elyse Burns. This record, petitioner asserts, was "invaluable impeachment evidence," that would have been a "decisive factor" in the outcome of the trial. Petition at 9.

The prosecution in criminal cases has a constitutional obligation under the due process clause to disclose evidence favorable to an accused. See Brady v. Maryland, 373 U.S. 83 (1972); Giglio v. United States, 405 U.S. 150 (1972). This responsibility, however, only covers exculpatory evidence that is "material" to the case. 405 U.S. at 154. "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Strickler v. Greene, 527 U.S. 263, 280-81 (1999) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). Failure to disclose such material "merits relief only if the prosecution's failure 'undermines confidence in the outcome of the trial.'" Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quoting Bagley, 473 U.S. at 678).

17

New York law sets out the particular materials prosecutors are obliged to disclose to the defense. Section 250.45(1)(b) of New York's Criminal Procedure Law specifies that prosecutors are to provide the *conviction* records of prosecution witnesses. Petitioner asserts that this rule required the prosecution to produce Ms. Burns's criminal record. However, although criminal charges had been brought against Ms. Burns, the charges had been adjourned in contemplation of dismissal (ACD). On collateral review, the Court noted that the criminal procedure law states that "an adjournment in contemplation of dismissal shall not be deemed to be a conviction or an admission of guilt." Therefore, because Ms. Burns had not been convicted, the prosecution was not required to produce this record to the defense. Accordingly, the State Court decision on this claim was not contrary to or an unreasonable application of Federal law.

## CONCLUSION

It is recommended that the instant petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. Because petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000), cert. denied, 531 U.S. 873, 121 S. Ct. 175 (Mem), 148 L. Ed. 2d 120 (2000).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72. Any request for an extension of time to file objections must be made within the ten day period. Failure to file a timely objection to this Report generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 83, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 174 (2d Cir. 2000); see Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: November 16, 2007
Brooklyn, New York